UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EPRIZE, L.L.C.,
a Michigan limited liability company,

    Plaintiff,

Case No. 06-14114

v.

Hon. John Corbett O'Meara

NET PRIZE, INC.,
a Michigan corporation,

    Defendant.
_____/

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

Before the court is Plaintiff's motion for preliminary injunction, filed September 20, 2006. Defendant filed a response brief on October 13, 2006. The court held an evidentiary hearing on October 24, 2006, and took the matter under advisement. For the reasons set forth below, Plaintiff's motion is DENIED.

**INTRODUCTION**

ePrize L.L.C. ("ePrize") is the owner of registered service marks "EPRIZE" and "ePrize." ePrize, which has been in business for over seven years, is an internet sweepstakes marketing company. ePrize's business generally consists of developing and running "interactive sweepstakes, points-based reward programs, and chance to win promotions for its clients." Pl.'s Br. at 1-2. ePrize's clients include the Coca-Cola Company, Visa, The Gap, Adidas, United Airlines, and many others. ePrize claims to have spent millions of dollars advertising and promoting its business and service marks.

ePrize contends that Net Prize, Inc. is infringing its service marks. Net Prize is a relatively new company formed in May 2005. Net Prize "offers a wide gamut of marketing services including incentives, fulfillment, paper based sweepstakes, production, travel programs and more traditional marketing services." Def.'s Br. at 1. ePrize argues that the similar company names and similar services offered create a likelihood that customers will be confused. Net Prize asserts that the only overlapping service the companies provide is "interactive sweepstakes." Net Prize also contends that the parties' service marks have a significantly different look and would not confuse their relatively sophisticated customers.

## **FINDINGS OF FACT**

1. Plaintiff ePrize provides services to its clients including internet sweepstakes, points based reward programs, and chance to win promotions.

2. ePrize is a Michigan limited liability company and has been in business since 1999.

3. On October 12, 2004, and January 18, 2005, the United States Patent and Trademark Office issued Plaintiff Certificates of Registration for the service marks "EPRIZE" and "ePrize." See Pl's. Exs. 2 and 3.

4. Defendant Net Prize is a Michigan corporation that was formed in May 2005.

5. Plaintiff ePrize's registered marks consist of a prefix "e", which signals internet commerce.

6. Defendant's name "Net Prize" begins with the prefix "net," which is shorthand for the internet.

7. Both Plaintiff ePrize's registered marks and Defendant's name Net Prize contain the same suffix, "prize."

8. Defendant Net Prize provides numerous marketing and sweepstakes services to its clients. The court finds that ePrize and Net Prize offer substantially similar services.

9. Both ePrize and Net Prize market their services to clients through use of the internet, face-to-face presentations, and networking.

10. The majority of ePrize's clients are among the top 100 brands in the nation and are relatively sophisticated, although the range of sophistication among ePrize's clients varies.

11. There were no facts presented that Defendant selected the name Net Prize with the intent to deceive or confuse consumers.

12. Plaintiff is not aware of examples of actual consumer confusion between ePrize and Net Prize.

13. No clients or potential clients of Plaintiff have indicated any potential confusion between Plaintiff and Net Prize.

14. Plaintiff did not present evidence of any actual harm caused by the use of the Net Prize name.

15. Insofar as the Conclusions of Law below are dependent upon facts, the court finds facts consistent with those conclusions.

## CONCLUSIONS OF LAW

1. Pursuant to the Lanham Act, ePrize seeks a preliminary injunction enjoining Net Prize from continuing to use the allegedly infringing service mark. Because this is a trademark infringement case, irreparable harm is presumed if ePrize can demonstrate a strong

    likelihood of success on the merits.  See Microsoft Corp. v. Action Software, 136 F.Supp.2d 735, 738-39 (N.D. Ohio 2001); Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000).

2.    "The essence of a trademark or tradename infringement claim brought pursuant to 15 U.S.C. § 1114(1) is 'whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 791 (6th Cir. 2004) (quoting Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997)).

3.    When evaluating the likelihood of confusion, we analyze and balance the following factors:
        1. strength of the senior mark . . .
        2. similarity of the marks
        3. relatedness of the goods or services
        4. evidence of actual confusion
        5. marketing channels used
        6. likely degree of purchaser care
        7. intent of [the defendant] in selecting the [allegedly infringing] mark
        8. the likelihood of expansion of the product lines.

Id. at 792-93 (citing Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982)).  The Sixth Circuit has emphasized that "[t]hese factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. . . . Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case. . . . *The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.*" AutoZone, 373 F.3d at 793 (citation omitted, emphasis in original).

4. "The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." AutoZone, 373 F.3d at 793. See also Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 631 (6th Cir. 2002) ("Generally, the strength of a mark is the result of its unique nature, its owner's intensive advertising efforts, or both.").

5. "Trademarks are generally categorized as fanciful, arbitrary, suggestive or descriptive. 'Fanciful and arbitrary marks are considered to be the "strongest" or most distinctive marks. . . . "Suggestive" and "descriptive" marks either evoke some quality of the product (e.g., Easy Off, Skinvisible) or describe it directly (e.g., Super Glue). Such marks are considered "weaker," and confusion is said to be less likely where weak marks are involved.'" AutoZone, 373 F.3d at 794 (citations omitted).

6. "ePrize" is a suggestive or descriptive mark because it suggests or describes the company's business – "e" or internet sweepstakes and prizes.

7. Also, the use of the common word "prize" suggests as weaker mark. See AutoZone, 373 F.3d at 794 (holding use of the common word "zone" suggests a weaker mark); Daddy's, 109 F.3d at 281 ("[T]he more common a word or phrase is, the less inherent trademark strength it may have. . . .").

8. Although ePrize's advertising efforts and media recognition may have strengthened its mark, on balance the court finds that ePrize's mark is relatively non-distinctive, making confusion between its mark and Net Prize less likely.

9. The next factor, the similarity of the marks, is "a factor of considerable weight."

Daddy's, 109 F.3d at 283.

10. "When analyzing similarity, courts should examine the pronunciation, appearance, and verbal translation of conflicting marks." AutoZone, 373 F.3d at 795.

> A side-by-side comparison of the litigated marks is not appropriate, although naturally the commonalities of the respective marks must be the point of emphasis. Instead, courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy impression or recollection of the other party's mark.

Id. (citations and quotation marks omitted). The court should view the marks "in their entirety and focus on their overall impressions, not individual features." Id. (citation omitted).

11. ePrize and Net Prize obviously share the same second syllable, although the pronunciation of the first syllable of each mark is not similar. See id. at 796. The visual appearance of the marks is quite different. The "e" in ePrize is springing out of a box, similar to a jack-in-the-box. The "e" is slightly angled and "prize" is in a bold font. The "Net Prize" mark does not contain a similar graphic, but contains the word "Net Prize" inside of a slanted rectangular border. "Net" is in a bold font, "Prize" is not, and both words are slightly italicized. Compare Pl.'s Ex. 3 with Pl.'s Ex. 8.

12. This case is similar to AutoZone, where the "marks have some visual and linguistic similarities, but ultimately their differences outnumber their similarities such that the likelihood of confusion is small." AutoZone, 373 F.3d at 795-96 (finding AutoZone and PowerZone marks to be dissimilar). See also Little Caesars Enterprises, Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 571-72 (6th Cir. 1987) (finding "Little Caesar" and "Pizza

Caesar" marks to be dissimilar); Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739 (2d Cir. 1998) (finding "Streetwise" and "StreetSmart" to be dissimilar).

13. Indeed, the only similarity between the two marks is the use of "prize," which is a common word. Based upon the current record, the court finds that the marks are not similar enough to create a likelihood of confusion.

14. With respect to the third factor, the parties disagree regarding the extent to which they offer the same services. The court finds that the parties offer substantially similar services and that they compete in the same marketplace.

15. As for the fourth factor, "[e]vidence of actual confusion is undoubtably the best evidence of likelihood of confusion." AutoZone, 373 F.3d at 798 (citation omitted). However, a "lack of such evidence is rarely significant. . . . " Id. ePrize admits that there is no evidence of actual confusion here, so this factor will not have any bearing on the court's analysis. See id. at 799 ("Because AutoZone presented no evidence of actual confusion, this factor should not have any bearing on the analysis.").

16. The fifth factor considers the marketing channels used by the parties. "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases." AutoZone, 373 F.3d at 793. Both parties market through face-to-face presentations, networking, and through use of the internet. Although this factor appears to weigh in Plaintiff's favor, its significance is decreased by the dissimilarity of the parties' marks and the fact that face-to-face presentations and networking also serve to decrease the likelihood of confusion. The parties' clients are not purchasing products off the shelf in a store, but are working with representatives of

ePrize or Net Prize to develop customized marketing services. The court finds that this type of interaction diminishes the likelihood of confusion.

17. In considering the sixth factor, the court analyzes the likely degree of purchaser care. In its papers, ePrize acknowledged that its customers are "large and prominent" corporations that are relatively sophisticated consumers. There was testimony, however, that ePrize's clients vary in their level of sophistication. (See Testimony of Gabriel Karp and Gary Shuman.) Even if ePrize's customers are considered relatively sophisticated, this fact only "disminish[es] somewhat" the likelihood of confusion. See Tdata Inc. v. Aircraft Technical Publishers, 411 F. Supp. 2d 901, 910 (S.D. Ohio 2006).

18. With respect to the seventh factor, the court considers Net Prize's intent in selecting its name. "Proving intent is not necessary to demonstrate likelihood of confusion, but 'the presence of that factor strengthens the likelihood of confusion.'" AutoZone, 373 F.3d at 799. Although there was testimony that Net Prize was aware of ePrize's existence before Net Prize was incorporated, there was no evidence that Net Prize intentionally infringed ePrize's mark or has attempted to create customer confusion.

19. The final factor courts consider in analyzing the likelihood of confusion is the likelihood of expansion of the parties' product lines. This factor is generally only important where there is presently little or no competition between the parties. Because the court has already found that the parties compete, this factor is of no significance. See Tdata, 411 F. Supp. 2d at 911.

20. In sum, although the parties offer similar services and compete for the same type of customers using similar marketing channels, the court finds that ePrize's mark is

relatively weak and that the parties' marks are dissimilar.  On balance, the court finds that ePrize has not demonstrated that its customers are likely to be confused or believe that it is affiliated with Net Prize in some way.

21. Accordingly, Plaintiff has not demonstrated a strong likelihood of success on the merits.

22. Further, Plaintiff has not demonstrated it would suffer irreparable injury if the injunction is not issued.

23. The other injunction factors – whether the injunction would cause harm to others and whether the public interest would be served by the issuance of the injunction – do not weigh in favor of an injunction here.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's September 20, 2006 motion for preliminary injunction is DENIED.

s/John Corbett O'Meara
United States District Judge

Dated:  December 12, 2006

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 12, 2006, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager